## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **HOUSING OPPORTUNITIES MADE EQUAL OF GREATER CINCINNATI 2400 READING ROAD #118 CINCINNATI, OH 45202** | : : | **JUDGE:** **Case No.:** |
| | : | |
| **AND** | : | |
| **SOPHIA SMITH 2400 READING ROAD #118 CINCINNATI, OH 45202** | : : | |
| | : | |
| **AND** | : | |
| **DEMEIRAKLE CARTER 2400 READING ROAD #118 CINCINNATI, OH 45202** | : : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| **COUNT X LLC 5414 CARRAHAVEN COURT CINCINNATI, OH 45237** | : : : : | **PLAINTIFFS' COMPLAINT FOR VIOLATIONS OF THE FAIR HOUSING ACT, OHIO REVISED CODE CHAPTER 4112, STATE TORT LAW, OHIO LANDLORD-TENANT ACT, AND THE CINCINNATI CODE OF ORDINANCES** |
| **AND** | : | |
| | : | |
| **M. AARON TAYLOR 5414 CARRAHAVEN COURT CINCINNATI, OH 45237** | : : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendants.** | : | |

## **COMPLAINT**

Now come Plaintiffs, Housing Opportunities Made Equal of Greater Cincinnati ("HOME"), Sophia Smith ("Plaintiff Smith") on behalf of herself and her minor children, and Demeirakle Carter ("Plaintiff Carter") (collectively the "Plaintiffs"), and state for their Complaint the following:

1. Plaintiffs brings this action for declaratory, injunctive, and monetary relief against Defendants, Count X LLC and M. Aaron Taylor (collectively the "Defendants"), for discrimination on the basis of disability, sex, and familial status in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112.01, *et seq.* (the "Fair Housing Laws"), state tort law, the Ohio Landlord-Tenant Act, Ohio Rev. Code § 5321.01, *et seq.*; and the Cincinnati Code of Ordinances.

2. Under the Fair Housing Laws, housing providers have a statutory obligation to not discriminate because of disability, sex, and familial status, among other protected characteristics.

3. Under the Ohio Landlord-Tenant Act, housing providers have statutory obligations to ensure the rental property is in a fit and habitable condition.

4. Disability discrimination occurs when a housing provider treats someone differently because they have a disability; harass, intimidate, or interfere with any person's rights under the Fair Housing Laws, or by denying a reasonable accommodation or reasonable modification.

5. Sex discrimination occurs when a housing provider treats a person differently because of their sex; harass, intimidate, or interfere with any person's rights under the Fair Housing

Laws; or otherwise make housing and the privileges associated with such housing unavailable because of their sex.

6. Familial status discrimination occurs when a housing provider treats a person differently because of their familial status; harass, intimidate, or interfere with any person's rights under the Fair Housing Laws, or otherwise make housing and the privileges associated with such housing unavailable because of their familial status.

7. Defendants' actions, housing policies, and practices impose different terms and conditions on current and prospective tenants with disabilities.

8. Defendants' policies and practices make housing unavailable for tenants with disabilities and impose different terms, conditions, and privileges based on the sex and familial status of the occupants, in violation of the Fair Housing Laws.

9. Defendants engaged in violations of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and Ohio Fair Housing Act, Ohio Rev. Code § 4112.01, *et seq.*, by imposing different terms and conditions on Plaintiff Smith and her children.

10. Defendants further engaged in disability, sex, and familial status discrimination by making disparaging remarks about Plaintiff Smith's family, including her son, Plaintiff Carter, who suffers from a disability, making sexual gestures and overt sexual comments regarding Plaintiff Smith's minor daughter, and including discriminatory provisions in the lease limiting the number of children and adults that may reside in the home.

11. Defendants harassed, intimidated, and interfered with Plaintiff Smith and her family, including Plaintiff Carter, which impaired their ability to fully use and enjoy their dwelling.

12. Defendants' actions, and housing policies and practices violate the Fair Housing Laws, 42 U.S.C. 3601, *et seq.;* and Ohio Rev. Code §4112.02(H), *et seq.*, in that Defendants: (A)

failed to perform routine maintenance resulting in failed inspections by the Cincinnati Metro Housing Authority ("CMHA"); (B) made sexually suggestive comments to Plaintiff Smith's minor daughter; (C) included discriminatory provisions in the lease limiting the number of children and adults that may live in the home; and (D) made discriminatory statements that Plaintiff Carter was a "retard." Such comments made Plaintiff Smith and her children, including Plaintiff Carter, feel uncomfortable and unwelcome.

13. Defendants negligently hired, trained, and supervised their employees thereby leading to discriminatory treatment for their residents, including Plaintiff Smith and her family.

14. Plaintiffs now bring this civil action seeking damages, fair housing training, and policy changes to ensure this type of discriminatory conduct is rooted out of Defendants' housing policies and practices.

## PARTIES

15. Plaintiff, HOME, is a private, non-profit corporation, organized under the laws of the State of Ohio. HOME Cincinnati has a principal place of business in Cincinnati, Hamilton County, Ohio. HOME's mission is to eliminate unlawful discrimination in housing for the Greater Cincinnati area. HOME advocates and enforces housing regulations for all protected classes and promotes stable, integrated communities.

16. HOME conducts housing discrimination testing to ensure that housing providers are meeting the requirements of all federal, state, and local fair housing laws. HOME also engages in counseling for clients to help ensure they receive fair and equal housing opportunities.

17. Plaintiff, Smith, is a resident of Cincinnati, Hamilton County, Ohio. Smith's son suffers from a qualifying disability under the Fair Housing Act. Plaintiff Smith's daughter is a minor.[1]

18. Plaintiff Carter is a resident of Cincinnati, Hamilton County, Ohio. Plaintiff Carter is disabled pursuant to the Fair Housing Laws.

19. Defendant, Count X LLC, is an Ohio corporation and a property management company. They conduct business across Southwest Ohio, including in the Greater Cincinnati area. Upon information and belief, Count X LLC manages the property in dispute in this matter.

20. Defendant, M. Aaron Taylor, owns the property in dispute located at 907 Lexington Avenue, Cincinnati, Ohio 45229. Upon information and belief, Defendant Taylor may own an interest in Count X LLC as he is the registered agent for the company.

21. Upon information and belief, Defendant owns several rental properties in Cincinnati, Ohio.

22. In acting or omitting to act as alleged herein, each Defendant acted through its employees, officers, and/or agents and is liable based on the acts and omissions of its employees, officers, and/or agents.

23. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by one or more Defendants as principal.

---

[1] For purposes of Fed. R. Civ. P. 17, Plaintiff Smith is the legal guardian and representative of her minor daughter and other minor children. She is also an aggrieved person under the FHA broad standing requirements. 42 U.S.C. § 3602(i).

## **JURISDICTION AND VENUE**

**24.** Jurisdiction is appropriate in that this civil action is brought under the Federal Fair Housing Act ("FHA") and Federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601, et seq.

**25.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises important federal questions under the FHA and FHAA.

**26.** This Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112.01, *et seq.* (the "Ohio Fair Housing Act"), the negligent training and supervision claim, the Ohio Landlord-Tenant claim, and the Cincinnati Code of Ordinances violation, under 28 U.S.C. § 1367, as there is a common nucleus of operative fact and the claims are so interconnected that judicial efficiency demands that they be litigated together.

**27.** Defendants are subject to the jurisdiction of this Court as they are a "Person" under the Fair Housing Laws and a Landlord under the Ohio Landlord-Tenant Act, and the acts described herein primarily occurred in Hamilton County, Ohio.

**28.** Defendants conduct business across Ohio, including but not limited to owning property, managing property, leasing property, and performing contractual obligations in Ohio.

**29.** Venue is proper in this Court in that the discriminatory acts occurred primarily in Hamilton County, Ohio.

**30.** Wherefore, Plaintiffs respectfully request that this honorable Court take jurisdiction of this Complaint and award such relief as is appropriate under the Fair Housing Laws, Ohio negligence law, the Ohio Landlord-Tenant Act, and the Cincinnati Code of Ordinances.

## FACTS

**31.** Plaintiffs restate and reallege each and every allegation in Paragraphs 1 through 30 as if fully restated herein.

**32.** Plaintiff Smith and Plaintiff Carter became tenants/residents at 907 Lexington Ave, Cincinnati, Ohio 45229 (the "Subject Property") in 2024.

**33.** The Subject Property is owned by Defendant Taylor and managed by Taylor and Defendant Count X LLC.

**34.** Smith receives a Housing Choice Voucher ("Voucher") to assist her with making rental payments and keeping her family housed.

**35.** Plaintiff Carter receives assistance from a local developmental disabilities' agency, as he suffers from a disability as defined by the Fair Housing Laws.

**36.** Plaintiff Smith has positive rental history as that is a critical component for her to retain the CMHA Voucher for her and her family.

**37.** As Plaintiff Smith was preparing to move into a residence, she inquired with Defendants regarding the availability of the Subject Property.

**38.** Defendants then pressured Plaintiff Smith to sign a lease agreement.

**39.** The lease agreement contained discriminatory provisions allowing only one (1) adult and three (3) children to reside in the Subject Property.[2]

**40.** Upon information and belief, Defendants later brought a separate set of rules and regulations in an amended lease for Plaintiff Smith to sign which was never discussed during the leasing process.

---

[2] This discriminatory provision made housing unavailable for Plaintiff Smith and her family because she has six children.

41. The subsequent lease contained a revised discriminatory provision, which was initialed on April 18, 2024, by C.Z. ("Ms. Z"), allowing only one (1) adult and six (6) children to reside in the Subject Property.

42. Defendants goal was to receive money from the CMHA Voucher program and make minimal effort in providing a fit and habitable dwelling.

43. Defendants failed their Section 8 inspection on more than two (2) occasions. As such, Defendants were required to make the necessary repairs to make the dwelling fit and habitable. During many of Defendant Taylor's trips to the Subject Property, no repairs were made at all.

44. On April 23, 2024, Plaintiff was moving into the Subject Property when Defendant arrived at the property with no notice, did not introduce himself, or acknowledge who he was.

45. Defendant entered the unit and began harassing Plaintiff and her children, raising his voice, and using expletives toward Plaintiff Smith, Plaintiff Carter, and Plaintiff Smith's minor children.

46. HOME's Assistant Director, LaTonya Springs, was contacted and traveled to the Subject Property to intervene and deescalate the situation.

47. After this interaction, Plaintiff filed a complaint with Cincinnati Metropolitan Housing Authority ("CMHA") regarding Defendant Taylor's ownership and Count X's management of the Subject Property and the individual misconduct of Defendant Taylor.

48. Defendant was served with notice of the CMHA complaint on or around April 25, 2024.

49. During the hearing on April 27, 2024, Defendants presented a notice regarding the remaining balance of repairs and generally denied wrongdoing.

50. On or about May 2, 2024, Defendant Taylor was at the Subject Property allegedly for another CMHA repair. Defendant did not complete any of the repairs scheduled for that date just as he had previously failed to complete repairs on other occasions.

51. During that interaction between Plaintiff Smith and Defendant Taylor, Defendant was in possession of a firearm, where Plaintiff Smith, her disabled son—Plaintiff Carter, her minor daughter, and her other children reside.

52. Plaintiff's children were aware that the Defendant possessed a firearm, causing discomfort, and severe emotional distress.

53. Defendant Taylor's act of bringing a firearm into the Plaintiff Smith and Plaintiff Carter's home posed a health and safety risk to Plaintiff Smith and her children.

54. Defendant Taylor then entered Plaintiff Smith's backyard and took unauthorized photographs of the Plaintiff Smith's children.

55. Plaintiff's minor daughter asked Defendant Taylor to leave the premises as she felt unsafe. Defendant refused to do so.

56. Plaintiff's minor daughter called the police. Upon information and belief, local police were at the Subject Property multiple times throughout the day. Police instructed Defendant Taylor not to return to the Subject Property with a firearm.

57. In response to that interaction, Defendants executed a plan to have Plaintiff Smith's vehicle towed from the Subject Property in a concerted effort to further harass Plaintiff Smith and her family.

58. On or about May 3, 2024, Defendant, with no notice, returned to the Subject Property, with his firearm.

59. Defendants intimidated and retaliated against Plaintiff Smith and her family for filing complaints with CMHA and for contacting the police when they felt unsafe. Such intimidation and retaliation included photographing her children, making sexually suggestive comments regarding Plaintiff Smith's minor daughter, calling Plaintiff Smith's disabled son a retard, and failing to make repairs or perform maintenance.

60. Defendant Taylor routinely used profane and obscene language in front of Plaintiff Smith's children which interrupted their quiet enjoyment of the Subject Property.

61. Count X's agent (known as "Ms. Z") went to Plaintiff Smith's work as a further act of harassing and intimidating Plaintiff Smith and her family.

62. Defendant's agent, Ms. Z, purposely gave Plaintiff Smith the wrong lease to sign containing discriminatory provisions and later supplemented it with another lease that included different discriminatory rules and regulations. Upon information and belief, this was to circumvent the strict CMHA process for receiving Voucher funds.

63. Defendant made discriminatory statements towards Plaintiff Carter and Plaintiff Smith's daughter and family. For example, Defendant Taylor loudly and continuously called Plaintiff Carter a "retard." Defendant Taylor further made Plaintiff Smith's daughter feel uncomfortable with sexual innuendos.

64. Upon information and belief, Defendant Taylor does not make these comments to male or non-disabled occupants.

65. Defendant Taylor has further made a habit of sitting outside Plaintiff Smith's home, and driving past the residence multiple times a day, in an effort to have her and her family intimidated into vacating the Subject Property.

66. Upon information and belief, Defendants issued a notice to vacate the Subject Property in direct retaliation for the acts described herein.

**HOME INVESTIGATION**

67. Plaintiff Smith contacted HOME to determine what her rights and responsibilities were in this matter. HOME was also contacted regarding rental assistance; consequently, they provided Plaintiff Smith with tenant counseling.

68. HOME launched an investigation after receiving the Smith complaint and referral.

69. HOME had previously conducted investigations into complaints regarding the Defendants from various previous and prospective tenants. As such, HOME was familiar with Defendants based on multiple complaints that were brought to them by members of the community.

70. The results of the extensive investigations into Defendants' actions, policies, and practices displayed several instances of the Defendants' discriminatory conduct against multiple protected characteristics. However, a majority of the discriminatory acts were against persons with disabilities, including Plaintiff Smith and her son.

71. Due to the nature of the allegations raised by Plaintiff Smith, HOME staff intervened with Plaintiff Smith, Defendants, and CMHA to try to resolve the ongoing issues and maintain housing stability for Plaintiff Smith.

72. HOME determined that tenants with mental disabilities were made to sign leases without having legal guidance/case managers weigh in on the leases.

73. HOME determined that Defendants' rules related to occupancy were overly restrictive and barred families from residing at Defendants' properties.

74. HOME determined that Defendant routinely engaged in abusive rental practices for families, women, and persons with disabilities, including making discriminatory statements on the basis of sex, familial status, and disability; engaging in harassing and retaliatory conduct after housing complaints; and repeatedly visiting the property without proper notice.

75. HOME determined that Defendant included discriminatory provisions in their leases limiting the number of adults and children that can live at Defendants' rental properties.

76. HOME further determined that Defendants failed to perform routine maintenance or make repairs for families and persons with disabilities.

77. HOME further determined that Defendants negligently trained and supervised their staff regarding their obligations under the Fair Housing Act, Ohio Rev. Code 4112.02(H), and Ohio Landlord-Tenant Act.

78. HOME further determined that Defendants are violating the late fees cap set by the Cincinnati Code of Ordinances, as they routinely charge over $100 for late fees when only $50 or less would be permitted by the Code.

79. The discriminatory actions, policies, and practices of Defendant forced HOME to divert its scare resources and frustrated its mission to ensure fair and equal housing opportunities for all regardless of disability, family status, or disability. Consequently, HOME assisted and counseled Plaintiff Smith in filing an administrative complaint with HUD and filed its own companion complaint against Defendants.

80. HOME diverted its resources from core services and pulled staff to investigate Plaintiff Smith's claims and the discriminatory actions by Defendants. HOME staff provided extensive tenant counseling, including rent assistance, and fair housing counseling to Ms.

Smith and her family. HOME staff conducted extensive research on Defendant Taylor's properties and company ownership.

## **INJURY TO PLAINTIFFS**

81. Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 80 as if fully restated herein.

82. Defendants' provisions in the lease as described herein were discriminatory and indicated a preference to limiting the number of children and adults allowed to live on the Subject Property.

83. Defendants' statements as described herein were discriminatory and indicated a preference to limiting the Subject Property to persons without disabilities.

84. Defendants' actions and policies as described herein made housing, and the privileges associated with housing, otherwise unavailable for tenants with disabilities and Plaintiff Smith and Plaintiff Carter's family.

85. Defendants' actions and policies as described herein imposed different terms, conditions, and privileges in housing based on familial status, disability, and sex.

86. Defendants' actions and policies as described herein indicate that Defendants intimidate, threaten, harass, and interfere with residents' fair housing rights.

87. Defendants' actions and policies, as described herein, breached disabled tenants' rights to fully use and enjoy the premises. For example, Defendants failed another CMHA inspection as recently as May 10, 2024 and failed to make repairs after calling Plaintiff Carter a "retard."

88. Defendants' actions and policies of visiting the Subject Property without the proper notice is a violation of the Ohio Landlord-Tenant Act.

89. Defendants' unlawful conduct, policies, and practices frustrated and impaired HOME's mission and purpose; forced them to drain their limited and scarce resources; and perceptively impaired their ability to operate as a fair housing organization.

90. Defendants' discriminatory conduct and policies forced and required Plaintiff to engage in numerous activities to identify and counteract the Defendant's unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination. Such activities include investigating Defendants' actions, policies, and rental practices; filing a Complaint with HUD; developing a training program geared toward disability, sex, and familial status discrimination; counseling Plaintiff Smith; and connecting Plaintiff Smith and her family to partners in the community to assist her with the treatment that she is experiencing.

91. Defendants' actions as described herein limit housing choice for persons with disabilities and families in violation of the Fair Housing Laws. Furthermore, the unwelcome advances towards Plaintiff Smith's minor daughter constitutes discrimination based on sex which further limits and reduces housing choice for Plaintiff Smith and Plaintiff Carter.

92. HOME will continue to divert its scarce resources and have its mission frustrated until Defendants' discriminatory conduct ceases; and the harms caused by Defendants on residents and prospective residents are remedied and resolved.

93. HOME's diversion of time and resources to address Defendants' discriminatory conduct has forced HOME to suspend other projects that would have furthered its mission, including: conducting training sessions, investigating and testing other housing providers, engaging in education and outreach, and missed speaking engagements and training conferences.

94. As a further result of this investigation, HOME is delayed in releasing a report on disparities in property tax assessments in Hamilton County, Ohio and developing outreach materials about criminal backgrounds and fair housing protections.

95. Plaintiffs now bring this Complaint for declaratory, injunctive, and monetary relief, in an amount in excess of $25,000.00, to be determined at trial, plus attorney fees and costs, also to be determined at trial.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended.
### 42 U.S.C. § 3601, et seq. (Disability, Familial Status, and Sex Discrimination)

96. Plaintiffs restate and reallege each and every allegation in Paragraphs 1 through 95 as if fully restated herein.

97. Defendants' conduct as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the familial status, sex or disability of a person residing in or intending to reside in a dwelling, in violation of 42 U.S.C. §§ 3604(b); 3604(f)(1); and 3604(f)(2).

98. Defendants' conduct as described in this Complaint constitutes discriminatory statements that indicate a preference, limitation, or discrimination based on familial status, sex, and disability in violation of 42 U.S.C. § 3604(c).

99. Defendants' conduct as described in this Complaint constitutes unlawful coercion, intimidation, harassment, and interference with the fair housing rights of Plaintiff Smith, Plaintiff Carter, and the minor children, in violation of 42 U.S.C. § 3617.

100. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs have

suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

101. Defendants' conduct as described in this Complaint further constitutes unlawful retaliation against Plaintiff Smith for participating in the housing complaint and hearing process.

102. Defendants frustrated the mission of HOME and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendants as referenced in this Complaint.

103. There are no valid or legitimate reasons for subjecting Plaintiff Smith, her children, and Plaintiff Carter to the discriminatory treatment they encountered on a daily basis.

104. Therefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS ACT

### R.C. § 4112.02(H), *et seq.* (Disability, Familial Status, and Sex Discrimination)

105. Plaintiffs restate and reallege each and every allegation in paragraphs 1 through 104 as if fully restated herein.

106. Defendants' conduct as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the familial status, sex, or disability of a person residing in or intending to reside in a dwelling, in violation of Ohio Rev. Code 4112.02(H)(4).

107. Defendants' conduct as described in this Complaint constitutes discriminatory statements that indicate a preference, limitation, or discrimination based on familial status, sex, and disability in violation of Ohio Rev. Code § 4112.02(H)(7).

**108.** Defendants' conduct as described in this Complaint constitutes unlawful coercion, intimidation, harassment, and interference with the fair housing rights of Plaintiff Smith, Plaintiff Carter, and the minor children in violation of Ohio Rev. Code § 4112.02(H)(12).

**109.** Defendants' conduct as described in this Complaint further constitutes unlawful discrimination on the basis of disability in violation of Ohio Rev. Code §§ 4112.02(H)(15) and 4112.02(H)(16).

**110.** Defendants' conduct as described in this Complaint further constitutes unlawful retaliation against Plaintiff Smith for participating in the housing complaint and hearing process.

**111.** As a direct, proximate, and foreseeable result of Defendants' discriminatory conduct and policies, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

**112.** Defendants frustrated the mission of HOME and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendants as referenced in this Complaint.

**113.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, plus costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT III – NEGLIGENT TRAINING AND SUPERVISION

**114.** Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 113 as if fully restated herein.

**115.** Defendants owed a duty to its tenants to train and supervise its employees, agents, and staff, regarding their obligations under the Fair Housing Laws, Ohio Landlord-Tenant Act, and late fees cap under the Cincinnati Code of Ordinances.

116. Defendants breached that duty of care by failing to provide fair housing or landlord-tenant training to its employees, agents, and staff. Defendants further breached that duty by failing to properly onboard its employees, agents, and staff with the necessary information to make informed leasing and maintenance decisions.

117. Defendants owed a duty of care to professionally train and supervise its employees, including its property managers and leasing agents, on fair housing laws and non-discriminatory practices.

118. Defendants breached their duty of care by negligently providing inadequate training and failing to supervise its property managers, agents, and leasing agents.

119. As a direct and proximate result of Defendants' negligent training and supervision, Plaintiffs suffered harm in the form of unfair and discriminatory treatment during the initial inquiry and maintenance and repair process.

120. As a direct and proximate result of Defendants negligence, Plaintiffs suffered damages in excess of $25,000.00, with the total amount to be determined at trial.

## COUNT IV – VIOLATION OF THE OHIO LANDLORD-TENANT ACT

### Ohio Rev. Code § 5321.01, *et seq.*

121. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 120 as if fully restated herein.

122. Defendants owe a duty under the Ohio Landlord-Tenant Act, Ohio Rev. Code § 5321.04, to comply with all applicable building, housing, health, and safety codes; make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition; maintain in good and safe working order all major appliances; and give reasonable notice before repairs are commenced.

**123.** Defendants breached that duty and failed multiple CMHA inspections.

**124.** Defendants failed to provide the proper notice of entry as required by Ohio Rev. Code § 5321.04(B).

**125.** Defendants violated Ohio Rev. Code § 5321.04(B) and § 15 and of their discriminatory lease which states, "Landlord shall exercise this right of access reasonably and shall not use this right to harass the renter in anyway," when they entered the Plaintiff's home without notice or permission with a firearm.

**126.** Defendant entered Plaintiff's backyard without notice or permission with a firearm and took unauthorized photographs of Plaintiff Smith's minor child and disabled son, Plaintiff Carter.

**127.** Defendants breached § 11, the quiet enjoyment clause, of their discriminatory lease and violated Ohio Rev. Code § 5321.02 when they routinely used profane and obscene language in front of Plaintiff Smith's children.

**128.** Plaintiff Smith and her family have never had quiet enjoyment of the Subject Property because of Defendants' actions.

**129.** As a direct and proximate result of these breaches, Plaintiff Smith and her family have been harmed.

**130.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, plus costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT V – VIOLATION OF THE CINCINATTI RENTAL LATE FEE CAP
### Cincinnati Code of Ordinances § Sec. 871-9, *et seq.*

**131.** Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 130 as if fully restated herein.

**132.** Defendants breached their duty under the Cincinnati Code of Ordinances § Sec. 871-9, to assess a rental late payment fee for any month no greater than fifty dollars ($50.00) or five percent (5%) of the monthly contract rent, whichever amount is greater.

**133.** Defendants violated Cincinnati Code of Ordinances § Sec. 871-9 which states the landlord shall not impose a late fee more than one time on a tenant's single late payment of rent; or impose a late fee on a tenant for the late payment or nonpayment of any portion of the rent for which a rent subsidy provider, rather than the tenant, is responsible for paying.

**134.** Cincinnati Code of Ordinances § Sec. 871-9 allows a late fee of five percent (5%) of Plaintiffs monthly rent of $985 totaling a $49.25 late fee or a rental late payment fee no greater than fifty dollars ($50.00)

**135.** Defendants lease in § 4 says there is a $100 late fee for rent paid after the third which exceeds and violates the Cincinnati Code of Ordinances § Sec. 871-9 statutory maximum fee of fifty dollars ($50.00) or five percent (5%) of the monthly rent.

**136.** Furthermore, Defendants lease in § 4 states there is an increased $200 late fee (additional $100) for rent paid after the fourteenth (14th) of the month which exceeds and violates the Cincinnati Code of Ordinances § Sec. 871-9 statutory maximum fee of fifty dollars ($50.00) or five percent (5%) of the monthly rent and imposes a late fee more than one time on Plaintiff's single late payment of rent.

**137.** Plaintiff utilized a section 8 voucher for her rent payments and per Cincinnati Code of Ordinances § Sec. 871-9 landlord shall not impose a late fee on a tenant for the late payment or nonpayment of any portion of the rent for which a rent subsidy provider, rather than the tenant, is responsible for paying.

**138.** Defendant is in direct violation Cincinnati Code of Ordinances § Sec. 871-9 and as a direct and proximate result of these breaches, Plaintiff Smith and her family have been harmed.

**139.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, plus costs and reasonable attorney fees, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendants' discriminatory conduct and policies as described herein, Plaintiffs respectfully request that this Court grant judgment in its favor, and against Defendants, as follows:

**A.** Declaring that Defendants' actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601, et seq., Ohio Rev. Code § 4112.02, *et seq.*, state tort law, the Ohio Landlord-Tenant Act, Ohio Rev. Code § 5321.04; and the Cincinnati Code of Ordinances;

**B.** Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future.

**C.** Awarding all compensatory damages, economic and non-economic, to Plaintiffs in an amount to be determined that would fully compensate Plaintiffs for the injuries caused by the conduct of Defendants alleged herein.

**D.** Awarding punitive damages to Plaintiffs in an amount to be determined that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future.

**E.**     Awarding reasonable attorneys' fees and costs as permitted by the Fair Housing Laws and the Ohio Landlord Tenant Act, Ohio Rev. Code § 5321.04(B); and

**F.**     Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on all issues triable as of right.


**Dated:** June 3, 2024

Respectfully submitted,

*/s/ C. Jacob Davis*
_____
C. Jacob Davis (#0101745)
NALLS DAVIS
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 660-4400
Jacob.Davis@nallslaw.com
*Attorney for Plaintiffs, Housing Opportunities Made Equal of Greater Cincinnati and Sophia Smith*

## **CERTIFICATE OF SERVICE**

I hereby certify that service of the Summons and Complaint is being made upon Defendants as required by the Federal Rules of Civil Procedure, via certified mail return receipt requested, or another form of proper service at the addresses listed in the caption of this Complaint.

Respectfully,

*/s/ C. Jacob Davis*
_____
C. Jacob Davis (#0101745)